UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KIMBERLY S. PERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:11-cv-00157-DML-JMS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

# Decision on Judicial Review

Plaintiff Kimberly S. Perry applied for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) on May 30, 2007,[1] alleging that she has been disabled since December 21, 2001, because of symptoms associated with mental problems and stress. (R. 140). Ms. Perry previously had received disability benefits based on an onset of disability of December 21, 2001, but in the course of the Social Security Administration's periodic review of her continued disability, a determination was made that her disability ceased as of July 31, 2006, and her benefits were terminated on December 1, 2006. (R. 12). She did not appeal that decision. Thus, the disability onset date applicable here is December 1, 2006.

Ms. Perry's disability claims were denied initially and on reconsideration. After a hearing held November 12, 2009, an administrative law judge acting for the Commissioner of the

---

[1] Two programs of disability benefits are available under the Social Security Act: Disability Insurance Benefits under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.,* and Supplemental Security Income disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.*

Social Security Administration found that Ms. Perry was not disabled because she is capable of performing unskilled work as a maid, janitor, or inspector, jobs which exist in significant numbers in Indiana. The National Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision for the Commissioner final. Ms. Perry filed this civil action, under 42 U.S.C. § 405(g), for judicial review of the Commissioner's decision.[2]

Ms. Perry challenges the ALJ's findings with respect to her mental impairments. She contends that the ALJ erred in determining, without a medical advisor, that her mental impairments did not meet or medically equal listing 12.03 (schizophrenic disorders) or 12.05 (mental retardation). She also asserts that the ALJ failed properly to account for Ms. Perry's mental impairments and unfairly judged her credibility as part of the residual functional capacity determination. Ms. Perry asks the court to reverse the ALJ's decision and award benefits or remand to the Commissioner for further proceedings.

## Standard for Proving Disability

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[3] Ms. Perry is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind

---

[2] The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

[3] The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.,* and at 20 C.F.R. § 416.901 e*t seq.*

of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands that there be more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citations omitted). *See also Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (court reviews record as a whole, but does not substitute its judgment for the ALJ's judgment by reweighing evidence, or resolving conflicts, or reconsidering the facts or witness credibility). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the

4

Commissioner's resolution of this conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir. 1996).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). If an ALJ concludes that benefits should be denied, he must have first built an accurate, logical bridge between the evidence and his conclusion. *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). The ALJ need not address every piece of evidence in his decision, but he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## **The ALJ's Findings**

Ms. Perry was born on May 18, 1969, was 32 years old at the time of the alleged onset of disability in 2001, and was 40 years old at the time of the ALJ's decision. At step one, the ALJ found that Ms. Perry had not engaged in substantial gainful activity since the alleged onset of disability, and had worked only for one month since that time. (R. 14). The ALJ found that Ms. Perry suffers from several severe mental impairments: major depressive disorder with psychotic features, post traumatic stress disorder, schizophrenia, personality disorder features, polysubstance abuse, and moderate mental retardation. (*Id.*). At step three, the ALJ evaluated Ms. Perry's mental impairments against listings 12.03, 12.04, 12.05D, 12.06, 12.08, and 12.09, each of which requires an assessment whether the particular mental impairment results in at least two of the following:

Marked restriction of activities of daily living; or

> Marked difficulties in maintaining social functioning; or
>
> Marked difficulties in maintaining concentration, persistence, or pace; or
>
> Repeated episodes of decompensation, each of extended duration.

The ALJ found these listing requirements were not met. (R. 15-18) The ALJ addressed the mental retardation listing, 12.05, in greater detail and concluded that Ms. Perry's intellectual functioning did not satisfy paragraphs A, B, or C of listing 12.05. (*See* R. 18-19).

The ALJ next determined Ms. Perry's residual functional capacity, and found that she is capable of working at all exertional levels but her mental impairments require that her work involve only simple, repetitive tasks that require little or no independent judgment or analysis. The ALJ further determined she would be limited to a work environment that is no more than mildly to moderately stressful, that allows her to work in intervals of no more than two hours before taking a 10-15 minute break, and that allows her to have her own work station with only occasional, superficial contact with coworkers and no contact with the general public. (R. 19-20). At step four, the ALJ found that Ms. Perry is not capable of performing her past relevant work. At step five, the ALJ found, based on the testimony of a vocational expert, that Ms. Perry is capable of working as a maid, janitor/cleaner, or inspector, and that there are a significant number of those jobs available in Indiana. Accordingly, the ALJ decided that Ms. Perry is not disabled. (R. 20-21).

## **Analysis**

Ms. Perry first asserts error in the ALJ's decision that her mental impairments did not meet the requirements of the B criteria for listing 12.03 or the criteria for listings 12.05B, 12.05C, or 12.05D. She also contends that the ALJ improperly assessed her credibility and functional capacity.

## I. The ALJ's step three decision regarding listing 12.03 is supported by substantial evidence.

The court first addresses listing 12.03, which describes schizophrenic, paranoid, and other psychotic disorders, and requires a level of severity tested by either the B criteria or C criteria. Ms. Perry's opening brief addresses only the ALJ's analysis of the B criteria, and not his analysis of the C criteria, so the court will confine its review to the B criteria as well.[4] As noted above, the B criteria are satisfied where a claimant's mental impairment results in two of the following: marked restriction in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration.

The ALJ's decision reflects a thorough study of Ms. Perry's mental health records and her treatment. She underwent several detailed psychological assessments in the period 2007 through 2009, and her records reflect other periodic mental status reports throughout this period,

---

[4] Ms. Perry's opening brief (Dkt. 20) addressing listing 12.03 asserted as error the ALJ's failure to find that she did not suffer from a schizophrenic disorder with delusions or hallucinations or emotional withdrawal or isolation with "marked difficulties in maintaining social functioning" and "marked difficulties in maintaining concentration, persistence, or pace." As the Commissioner points out, this phraseology coincides with the general A criteria for 12.03 and *only* the B criteria for 12.03. Ms. Perry did not cite to the C criteria for 12.03 and made no effort to tie any evidence to the C criteria. Ms. Perry waited until her reply brief to address the C criteria, but waiting until the reply brief to make arguments that could have been made in an opening brief is too late. That tactic does not give the Commissioner an opportunity for response. *See Waite v. Bowen,* 819 F.2d 1356, 1360 n. 1 (7th Cir. 1987) (refusing to consider new argument in reply brief in appeal of adverse disability determination). The court finds that Ms. Perry waived this argument, but also notes that the record contains medical opinion supporting the ALJ's conclusion that Ms. Perry did not meet the C criteria (R. 262). Furthermore, some of the "evidence" cited by Ms. Perry is contradicted by other evidence that the ALJ credited. For example, the ALJ noted that Ms. Perry told an examiner that she has never had a driver's license and cannot drive, but another therapy note describes her having been jailed for driving while her license was suspended. (R. 17). Ms. Perry also references her inability to function, but the ALJ discussed Ms. Perry's sister's description of her functioning, including the statement that Ms. Perry helps her sister care for eight grandchildren. (R. 18). Ms. Perry's sister also commented that if Ms. Perry takes her medication, she can concentrate, get things done if she wants to, and can cook and do laundry. (R. 161).

which were likewise addressed by the ALJ. Ms. Perry participated in group therapy beginning in June 2007 through May 2009, as a condition of probation after a felony conviction and incarceration. She regularly took psychiatric medication: Seroquel for the treatment of schizophrenia and Tofranil for the treatment of depression, except for a period in 2009 when she was pregnant. In late August 2009, after she had her baby, Ms. Perry was restarted on her medication and in October 2009, an additional medication (BuSpar for the treatment of anxiety disorders) was added to her treatment. The ALJ found these medications to have been appropriate to treat Ms. Perry's impairments and to have been relatively effective in controlling her symptoms as reflected in mental health progress notes that the medication stabilizes her mood and stops her hallucinations.

      The ALJ discussed the factors that led him to conclude that Ms. Perry was only mildly limited in her activities of daily living (addressing, among other things, her grooming, household activities, and care for her children and her sister's grandchildren), and that she had moderate—but not marked—difficulties with social functioning (reflected in her avoidance or irritation with groups of people) and with concentration, persistence, or pace (as noted in several of her mental health progress notes). He also specifically addressed a mental capacity assessment form completed by Ms. Perry's case manager on October 7, 2009, on which the case manager checked the boxes that Ms. Perry was markedly limited in every aspect of her basic mental activities, except for a moderate limitation in her ability to understand and remember detailed instructions (while at the same time, strangely, having a marked limitation in her ability to understand and remember very short and simple instructions). The ALJ explained that he gave little weight to this assessment, finding it "completely inconsistent with the mental health progress notes" which reflect "stability and good functioning" when Ms. Perry takes her medication, a finding that is

supported by the record. The ALJ further stated his reasons for crediting, and giving "great weight" to the psychiatric assessments by state agency psychologists instead, which found that Ms. Perry was not markedly limited in her functioning, had only moderate limitations in some aspects of her social functioning, and concentration, persistence, or pace, and did not meet or medically equal any of the listings. (*See* R. 247-264).

       For her part, Ms. Perry essentially ignores the ALJ's detailed evaluation of the evidence. She cites to mental health records she believes would permit the ALJ to make a different assessment, but she does not show that the ALJ failed to grapple with evidence contrary to his findings, or otherwise committed a legal error or reached a judgment at odds with the record. Ms. Perry highlights two records from 2003 when she was evaluated at Logansport State Hospital, a psychiatric institution, that report her history of auditory hallucinations and being first prescribed Seroquel, a medication for the treatment of schizophrenia. Although the ALJ did not cite to these records, he found that Ms. Perry had been diagnosed with schizophrenia, that her mental health records reflect reports of hallucinations, and that her hallucinations are effectively controlled by medication. (R. 17). His finding that Ms. Perry "does not have hallucinations" when she takes her medication finds support in the mental health progress notes and the reports of her family members. Thus, the ALJ did not ignore an entire line of evidence. *See Jones v. Astrue,* 623 F.3d 1155, 1162 (7th Cir. 2010) (ALJ not required to discuss every piece of evidence but is "prohibited only from ignoring an entire line of evidence that supports a finding of disability").

       Ms. Perry also argues that the ALJ should have summoned to the hearing a medical expert to offer an opinion whether Ms. Perry's impairments met or medically equaled a listing, but she ignores the ALJ's reliance on medical expert opinion in the record that her impairments

9

did not meet or medically equal a listing, an opinion that expressly considered a one-time assessment of Ms. Perry's GAF at 45—a piece of evidence she erroneously contends was ignored (R. 249).  *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (ALJ may properly rely on state agency psychological consultants on the question of medical equivalence); *Thomas v. Astrue,* 2010 WL 2485556 (S.D. Ind. June 11, 2010) (ALJ does not err in failing to summon medical expert on equivalence where no showing is made that ALJ disregarded pertinent medical evidence contrary to his findings or failed to adequately explain how he reached the decisions he did).

**II.     The ALJ's step three decision regarding listing 12.05 is supported by substantial evidence.**

Ms. Perry addresses the ALJ's analysis of listing 12.05 only perfunctorily.  She lists the requirements of subparagraphs B, C, and D of 12.05 and cites to some record evidence to support these requirements, but she does not address at all the ALJ's evaluation of the evidence against the requirements of this listing.  Each of subparagraphs B, C, and D requires, among other things, evidence of a "valid" verbal, performance, or full scale IQ score at a certain level (either a score of 59 or less for subparagraph B, or a score between 60 and 70 for subparagraphs C and D).

Dr. Nancy Ingwell administered the Wechsler Adult Intelligence Scale testing to Ms. Perry in December 2007, and the results were scores of 57 for verbal and performance, and 53 as a full scale IQ score.  But Dr. Ingwell discounted the validity of the scores because of Ms. Perry's "angry, somewhat disgusted attitude throughout the interview and testing," and concluded that the scores were only "as valid and reliable measure[s] of her abilities as it was possible to obtain under the circumstances."  (R. 276-281).  The ALJ concluded too that the IQ scores were of dubious validity, based on Dr. Ingwell's statement, the absence in Ms. Perry's

treatment records of notation of difficult problems with intellectual functioning, and Ms. Perry's ability at the hearing to testify articulately and logically.  Ms. Perry argues that the ALJ was not permitted to discount the validity of the testing because he was not competent to do so, but she does not cite any authority that an ALJ cannot determine validity based on the record.  The ALJ's decision not to accept the IQ scores as valid is supported by substantial evidence in the record, and the court will not disturb that finding.  *See Winfield v. Barnhart,* 269 F. Supp. 2d 995, 1007 (N.D. Ill. 2003) (citing *Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999)) (ALJ may find that IQ score is invalid where it is not consistent with the record); *Felver v. Barnhart,* 243 F. Supp. 2d 895, 904 (N.D. Ind. 2003) (ALJ may find IQ score invalid where doctor administering test questions its validity).

Accordingly, the court finds the ALJ's decision that Ms. Perry's intellectual functioning did not meet or medically equal all of the criteria for 12.05B, 12.05C, or 12.05D, the subparagraphs for the mental retardation listing, is supported by substantial evidence.

### III.     The ALJ's credibility and RFC analysis are supported by substantial evidence.

Ms. Perry's challenge to the ALJ's evaluation of her credibility and determination of the functional limitations imposed by her mental impairments is, at bottom, a request that the court reweigh the evidence.   The same matters she argues required the ALJ to find that her mental impairments were of listing-level severity are repeated in her arguments that the ALJ erred in evaluating her credibility and determining her residual functional capacity.  The court has already found that the ALJ's evaluation of the evidence concerning Ms. Perry's mental impairments is supported by substantial evidence in the record.

Social Security Ruling 96-7p describes the appropriate process for evaluating credibility and requires an ALJ to consider a claimant's subjective complaints in light of the relevant

objective medical evidence, as well as any other pertinent evidence regarding the claimant's daily activities, the severity and intensity of the claimant's symptoms, precipitating and aggravating factors, medication, treatment, and other measures to relieve the claimant's symptoms and their efficacy and side-effects, and any other factors relevant to functional limitations due to a claimant's symptoms. *See* SSR 96-7p; 20 C.F.R. § 404.1529(c)(3). It is not necessary for the ALJ to recite findings on every factor, but the ALJ must give reasons for the weight given to the claimant's statements so that the claimant and subsequent reviewers have a fair sense of how the claimant's testimony was assessed. *Brindisi v. Barnhart,* 315 F.3d 783, 787-88 (7th Cir. 2003).

Ms. Perry contends that the ALJ did not make "accurate" findings on the factors under SSR 96-7p, revealing quite starkly that she seeks a re-evaluation of the evidence but cannot show that the ALJ reached a decision that is patently wrong. *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008) (because ALJ is in best position to evaluate credibility, his credibility determination is reviewed deferentially and will be set aside only if "patently wrong"). The ALJ did not, as Ms. Perry asserts, "ignore" the evidence regarding her daily living activities, her hallucinations, or her antipsychotic medication. His decision discusses all of these matters, and documents instances of inconsistent statements made by Ms. Perry and his observation (and that of a psychologist, R. 335) that she "generally" may not be entirely reliable. (R. 17).

Moreover, the ALJ's RFC credited that Ms. Perry's mental impairments impose some significant limits on her work functioning, which he incorporated into his RFC. He believed that Ms. Perry suffers when she is around others, and limited her to jobs where she works nearly completely independently, with her own work station, with occasional and only superficial contact with co-workers and supervisors, and no contact with the public. He believed that Ms.

12

Perry has difficulties sustaining concentration, persistence, and pace, and limited her to jobs that require only simple and repetitive tasks and allow her to take a break for 10-15 minutes every two hours. (*See* R. 19). Other than claiming that the ALJ was required to adopt the October 2009 functional evaluation prepared by Ms. Perry's case manager (which he was not and he found was "completely inconsistent" with the record), Ms. Perry does not point to any functional limitations that the ALJ should have imposed but did not.

The court finds that the ALJ's evaluation of Ms. Perry's credibility is not patently wrong, that his determination of her RFC is supported by substantial evidence, and that he reasonably relied on the testimony of the vocational expert that significant jobs exist in Indiana consistent with Ms. Perry's RFC.

## **Conclusion**

The Commissioner's decision that Ms. Perry is not disabled is AFFIRMED.

So ORDERED.

Date: 03/15/2012

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com